In re Clayton C. O'QUINN, a/k/a Clayton O'Quinn, and Marjorie N. O'Quinn, d/b/a Grosse Pointe Stud Farm, Debtors.

**Bankruptcy No. 88–3119–BKC–3P1.**

United States Bankruptcy Court,
D. Florida,
Jacksonville Division.

March 23, 1989.

Lisa C. Cohen, Keystone Heights, Fla., for debtor.

W. James Gooding, III, Ocala, Fla., for movants.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon motion filed by Branch Properties, Inc., and Sun Bank of Ocala ("Movants") seeking relief from the automatic stay or adequate protection. A hearing was held on February 9, 1989, and upon the evidence presented, the Court enters the following Memorandum Opinion:

## FACTS

The debtors own and operate a cattle and horse farm near Ocala, Florida. They have real property consisting of five parcels of real estate, including the Grosse Pointe Stud Farm, 220 acres on State Road 40, 164 acres abutting County Road 225–A, 20 acres South of State Road 40, and 80 acres in South Marion County. The debtors also own 160 horses, 200 herd of cattle and are the holders of a note and mortgage receivable from H & S Real Estate Company, Ltd. (the "H & S Mortgage Receivable").

The real property is encumbered by a debt owing to movant, Branch Properties, Inc. ("Branch") in the amount of $1,723,-742.73. This debt is secured by a mortgage executed by the debtors in favor of Branch in January of 1988, as well as an assignment of the H & S mortgage receivable. This collateral was subsequently assigned by Branch to Sun Bank of Ocala ("Sun Bank").

The debtors defaulted under the terms of the note and mortgage by failing to make the payment due May 1, 1988, and all payments thereafter. Consequently, Branch and Sun Bank filed suit in state court to foreclose on the debtors' property (the "foreclosure action"). On December 9, 1989, movants filed a motion for summary judgment in the foreclosure action which was scheduled to be heard on January 4, 1989. The trial of the foreclosure action was also scheduled for January 20, 1989.

In December, 1988, movants released the lien of the mortgage as to debtors' real property located in Decatur County, Georgia. In consideration for the release, the debtors paid movants $75,000.00 and stipulated to the entry of a Final Judgment in the foreclosure action.

On December 16, 1988, the debtors filed under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101, *et seq.* By virtue of § 362(a), the state court foreclosure action was stayed.

In addition to the obligation owed to the movants, the debtors show on Schedule A–1 an unsecured priority debt to the Internal Revenue Service in the amount of $700,000.00 and approximately $385,000.00 in obligations to various judgment creditors. The schedules also list approximately $110,000.00 in unsecured debt owing to twenty-four other creditors.

The motion of January 12, 1989, seeking relief from the automatic stay argues that this reorganization proceeding is filed in bad faith for the sole purpose of frustrating and delaying the contractual rights of creditors. If proven, such a finding would support a lifting of the automatic stay for "cause."

The Court notes that this is the debtors' second bankruptcy filing. On August 12, 1985, they filed a Chapter 11 petition with this Court which was dismissed on January 14, 1988, when the debtors defaulted in payment under the confirmed plan of reorganization. (Finding that debtors were "farmers" precluded a conversion to Chapter 7.)

## DISCUSSION

### A. "BAD FAITH"

Movants seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). That section provides:

> (d) On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such

as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

The Eleventh Circuit Court of Appeals has mandated that filing a petition in bad faith is "cause" for lifting the automatic stay. *In re Little Creek Development Company*, 779 F.2d 1068 (11th Cir.1986).

The Eleventh Circuit advises that there is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts are advised to consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir.1987); *See also, In re Brandywine Associates, Ltd.*, 85 B.R. 626 (Bkrtcy.M.D.Fla.1988).

The litany of factors which case law suggests is evidence of bad faith are:

(i) The debtor has one asset, such as a tract of undeveloped or developed real property;

(ii) The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(iii) The debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action;

(iv) The property is the subject of a foreclosure action as a result of arrearage on the debt;

(v) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

(vi) There is a lack of a realistic possibility of an effective reorganization;

(vii) The debtor has few employees;

(viii) The debtor is seeking to use the bankruptcy provisions to create and organize a new business, not to reorganize or rehabilitate an existing enter-

prise or to preserve going concern value of a viable or existing business; and

(ix) The debtor appears to be merely a shell corporation.

*See, In re Little Creek Development Corp., supra; In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988); *In re RAD Properties, Inc.*, 84 B.R. 827 (Bkrtcy.M.D.Fla.1988); *In re Brandywine Associates, Ltd.*, 85 B.R. 626 (Bkrtcy.M.D.Fla.1988); *In re Bell Partners, Ltd.*, 82 B.R. 593 (Bkrtcy.M.D. Fla.1988); *In re Sar–Manco, Inc.*, 70 B.R. 132, 141 (Bkrtcy.M.D.Fla.1986).

■ Contrary to movants' contention, the evidence shows that the debtors own and operate a viable horse and cattle farming operation which has a realistic possibility of reorganization. In addition, the Court notes that the debtors have several other pieces of real estate and a substantial inventory of equipment, brood mares, stallions and cattle. In other words, this is not the typical single asset/single creditor dispute which is often present in "bad faith" cases.

An examination of the debtors' schedule of assets and liabilities indicates that the relation of unsecured debt to secured debt is substantial. For example, debtors owe approximately $700,000 to the Internal Revenue Service, $385,000 to judgment creditors, and approximately $110,000 to twenty-four general unsecured creditors. Given the size of this estate, the Court does not conclude that this is merely a two-party dispute.

Although the Court recognizes that the filing of this case was motivated in part by the pending foreclosure action, there is no doubt that the debtors have serious economic problems, with a wide variety of creditors, which were not solved by the prior Chapter 11 case. Debtors could have legitimately sought relief from creditors without consideration of the pending foreclosure action. Accordingly, the Court finds that the petition was filed consistent with the Congressional intent of rehabilita-

tion and reorganization and to preserve the going concern value of the assets for the benefit of all creditors.

A great deal of emphasis is predicated on the premise that the debtors were parties in a previously dismissed Chapter 11 case. Although the Court frowns on the filing of successive petitions, the Court notes that the prior proceeding was not dismissed until after the debtors had successfully confirmed a plan of reorganization. Moreover, this case does not appear to be a situation involving repetitive filings to delay a single secured creditor. The Court holds that the filing was not in bad faith.

## B. ADEQUATE PROTECTION

██ Having determined that "cause" for lifting the automatic stay is lacking, the Court must now address the request for adequate protection. Section 361(3) of the Code allows a Court to provide adequate protection by "granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." Typically, adequate protection takes the form of monthly or quarterly cash payments. In some cases, the existence of a sufficiently large equity cushion is sufficient in and of itself to provide adequate protection for an oversecured creditor.

Determining whether a secured creditor is adequately protected involves a valuation of both the indebtedness owed to the creditor and the property securing the indebtedness. *In re Shockley Forest Industries, Inc.*, 5 B.R. 160 (Bkrtcy.N.D.Ga.1980). A sister court held, "[v]aluation in a given case depends on that calculation which properly reflects a secured creditor's true state of protection." *In re Phoenix Steel Corp.*, 39 B.R. 218, 224 (D.Del.1984).

The "true state of protection" depends largely upon such factors as the nature of the debtor's business, general prospects for reorganization, the time lapsed since the filing of the petition, and the existence, or lack of, an equity cushion. *See generally,* 2 *Collier on Bankruptcy*, 361.02 (15th Ed. 1987).

In this case, there is a large equity cushion which can adequately protect the movants' interest. Thomas Edward Rhodes, a real estate appraiser, testified on behalf of the debtors and stated that the fair market value of the land and improvements owned by the O'Quinns was $3,975,000.00. The movants' appraiser, Alfred Cavalier, testified that the value of this same property was approximately $3,276,883.00, and even if the property were sold on an emergency liquidation basis, the debtors could still expect to receive $2,138,166.00.

Assuming for argument's sake that the movants' emergency liquidation figures are correct, there is still an equity cushion of $414,423.27. Throw in the value of the H & S mortgage receivable ($425,000.00), and the movants' will enjoy an equity cushion in their collateral in excess of 48 percent. This is more than enough equity to provide movants with adequate protection. *See, e.g., In re Heath,* 79 B.R. 616 (Bkrtcy.E.D. Pa.1987) (Equity cushion of 39 percent was sufficient adequate protection without the need for further payment); *In re McKillips,* 81 B.R. 454 (Bkrtcy.N.D.Ill.1987) (20 percent equity cushion generally sufficient).

The Court certainly sympathizes with the frustration of creditors as to repetitive filings and excessive "foot dragging". However, the Court believes the debtors are making progress in selling the 164 acre parcel of property and that the proceeds of the sale will be sufficient to reduce the debt owed to movants substantially.

In addition, the Court notes that Branch has been receiving approximately $3,500 a month from the assignment of the H & S mortgage receivable. Debtor, Clayton C. O'Quinn, testified that he was agreeable to having Branch continue to receive these monthly payments until the plan is confirmed.

## CONCLUSION

The Court will, by separate order, deny the motion for relief from automatic stay and the request for adequate protection.