**In re CARCO PARTNERSHIP, Debtor.**

**Bankruptcy No. 90–0399–3P–1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 3, 1990.

Lawrence J. Hamilton, II, Jacksonville, Fla., for Goldome Realty Credit.

Lance P. Cohen, Jacksonville, Fla., for debtor.

Lynne L. England, Tampa, Fla., Asst. U.S. Trustee.

## MEMORANDUM OPINION CONCERNING GOLDOME REALTY CREDIT CORPORATION'S MOTION FOR RELIEF FROM AUTOMATIC STAY

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court on the Motion for Relief From Automatic Stay filed by Goldome Realty Credit Corporation ("GRCC"). Hearings on the Motion were held on March 5 and March 14, 1990, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. This Motion was filed by GRCC as a secured creditor seeking relief from the automatic stay to continue a mortgage foreclosure action pending in the Circuit Court of Duval County, Florida on Debtor's real property and to secure the rents.

2. GRCC has a mortgage on certain land and improvements known as the Pablo Trace Apartments located in Duval County, Florida. The land, improvements and the rents, issues and profits will be referred to as the "Pablo Trace Apartments".

3. Legal title to the Pablo Trace Apartments is in the name of John E. Carter, Jr. and Ann S. Carter (the Carters) and Joe E. Cowart and Edith L. Cowart (the Cowarts), as reflected in the Warranty Deed dated April 1, 1986. (GRCC's Exhibit 2).

4. Although Carco Partnership does not have legal title to the Pablo Trace Apartments, it claims ownership of the apartments and argues that the automatic stay of Section 362, by virtue of the Chapter 11 filed by Carco Partnership, stays the foreclosure of the Pablo Trace Apartments.

5. Interest is due under the GRCC loan upon the Pablo Trace Apartments since November 1, 1989.

6. Real estate taxes remain unpaid on the Pablo Trace Apartments for the years 1986 through 1989. Such taxes total approximately $158,000.00 for 1986 through 1988, if paid before the end of March, 1990. Tax certificates were issued upon the Pablo Trace Apartments for the years 1986 through 1988 and an application for tax deed was applied for in 1989 upon the Pablo Trace Apartments by reason of the nonpayment of such taxes. In addition, approximately $108,000.00 will be owed for the 1989 real estate taxes before the end of March, 1990.

7. The 1990 real estate taxes are accruing on the Pablo Trace Apartments at approximately $9,000.00 per month, and no money has been escrowed by the Debtor for payment of such taxes.

8. The Promissory Note and Mortgage and Security Agreement which were introduced into evidence as GRCC's Exhibits 3 and 4, respectively, require monthly payments of interest on the first day of each month, require the payment of real estate taxes when due and require the escrowing of money with GRCC of pro-rated taxes and insurance upon request.

9. The Court finds that GRCC has a duly-recorded and perfected security interest in the Pablo Trace Apartments and the rents, leases and profits and that the makers of the Promissory Note, the Carters and Cowarts, breached the Note and Mortgage by failing to timely make the November, 1989 payment, by failing to timely pay the real estate taxes for 1986 through 1988 and by failing to escrow taxes and insurance as requested by GRCC's letter of November 2, 1989. (GRCC's Exhibit 6).

10. Although the Debtor introduced testimony of an alleged oral forbearance agreement with GRCC, the Court found such testimony to be factually unconvincing and legally insufficient. The Debtor was able to produce no documentation reflecting a forbearance agreement nor was the Debtor able to establish any new consideration to GRCC such as is necessary to enforce an agreement by GRCC to forbear from what it was already entitled to receive under its loan documents. Moreover, the Mortgage and Security Agreement required that any amendments be in writing and signed by GRCC, which was not done.

11. Carco Partnership testified, through one of its general partners, Mr. John E. Carter, Jr., that it has approximately 20–25 employees but that only approximately 6 of such employees work at the Pablo Trace Apartments.

12. The only properties titled in the name of Carco Partnership are the Mayport Trace Apartments and Mini–Warehouse and an office building located on Fairmont Street in Duval County, Florida.

13. The Mayport Trace Apartments and Mini–Warehouse are secured with a mortgage from Carteret Savings Bank. Carteret Savings Bank has filed a foreclosure action and has sought appointment of a receiver by virtue of the maturity of its debt in the amount of approximately $7,065,000.00, according to the Debtor's Schedule A–2 herein. Moreover, on March 23, 1990 the Debtor consented to entry of an order granting relief from the automatic stay in favor of Carteret Savings Bank. The office building on Fairmont Street, on the other hand, houses only the Debtor and other entities related to the Debtor and/or its general partners, none of whom are paying rent at this time. Significantly, the only mortgage of the Debtor that is current is the office building, occupied by the Debtors and its insiders.

14. The Debtor admitted that on or about January 12, 1990 GRCC filed its foreclosure complaint against the general partners of Carco Partnership and others and that such action is pending as Case No. 90–00348–CA, Division CV–D in and before the Circuit Court of Duval County, Florida (the "State Court Foreclosure Action").

15. By Order dated January 30, 1990 the Judge in the State Court Foreclosure Action, after an evidentiary hearing, found that the loan was in default and granted GRCC's application for enforcement of its assignment of rents clause in the Mortgage and Security Agreement (GRCC's Exhibit 12). On March 12, 1990 a hearing was scheduled on the Motion for Appointment

of Receiver filed by GRCC (GRCC's Exhibit 10).

16. As a result of the foreclosure action and the Order granting Goldome Realty Credit Corporation's application for enforcement of assignment of rents, on February 2, 1990 Carco Partnership filed its Petition for Reorganization herein and on February 5, 1990 Carco Partnership filed a Suggestion of Bankruptcy (GRCC's Exhibit 13) in the State Court Foreclosure Action taking the position that the automatic stay of the Carco Partnership reorganization applied to the State Court Foreclosure Action.

17. The debt owed to GRCC secured by the Pablo Trace Apartments is as follows:

    A. Principal—$6,266,099.15;

    B. Interest through February at 12.56%—$327,925.85 (5 months at $65,585.17 per month);

    C. Per diem beginning March 1, 1990—$2,186.17;

    D. Pre-payment penalty—$62,660.99;

    E. Late charge—$17,278.80;

    F. Total including per diem through March 26, 1990—$6,730,805.11; and

    G. Attorneys' fees and costs—unliquidated.

18. Assuming the Pablo Trace Apartments are owned by Carco Partnership or it has an interest in the apartments, then the total secured debt of Carco Partnership exceeds $14,000,000.00 whereas the Debtor's schedules reflect that it has only $531,723.25 in unsecured claims, of which $100,000.00 are owed to Mr. John E. Carter, Jr., a general partner and insider of the Debtor, Carco Partnership.

19. The major other unsecured creditor of the Debtor is C & S Bank, which is listed by the Debtor as having an unsecured claim of $257,512.43, which the Debtor admitted is secured with property owned by other persons or entities.

20. Other than the real property of the Debtor, all of which is wholly or substantially secured, the Debtor possesses relatively few other assets. The Debtor lists in its schedules insubstantial cash. Its largest assets from a personalty perspective are appliances located in the Pablo Trace Apartments and Mayport Trace Apartments, which are listed at their book value as opposed to their true market value, and a $700,000.00 money judgment against El Aqua Corporation in the amount of $700,000.00, which the Debtor admitted may not be collectible. Moreover, to the extent of the personalty and appliances at the Pablo Trace Apartments, it appears that GRCC has a lien on such items (GRCC's Exhibit 4, page 2).

21. The Debtor introduced testimony that it claims to, and it appears to, possess an equitable interest in the Pablo Trace Apartments notwithstanding that legal title is in the names of the general partners, the Carters and Cowarts.

22. The Debtor testified that the Carco Partnership has lost money every year since it was formed in 1986 and also that the Pablo Trace Apartments have lost money each year and have required a subsidy of between $25,000–$45,000.00 in most months.

23. Mr. Richard Hamilton, an appraiser, testified as an expert witness on behalf of GRCC with respect to the value of the property. The Court accepts Mr. Hamilton's opinion, for purposes of this Motion only, that the value of the Pablo Trace Apartments, as of December 15, 1990, is $7,000,000.00.

## CONCLUSIONS OF LAW

1. GRCC states that it is entitled to relief from the automatic stay pursuant to:

    (A) Section 362(d)(1) for cause, based both on bad faith in the filing of the Petition and by lack of adequate protection of GRCC's interest in the Pablo Trace Apartments; and

    (B) Section 362(d)(2) because the Debtor has no equity in the property and the property is not necessary to an effective reorganization.

2. The Debtor testified that it can begin making monthly payments at the contract rate (as opposed to the default rate) to GRCC beginning April 1, 1990. The Debtor admitted, however, that it is and will be unable to pay the 1989 real estate taxes nor

can it escrow the 1990 real estate taxes unless and until such time as a closing occurs on a proposed bond sale of the Mandarin Manor Retirement Village and the Mandarin Manor Nursing Home.

3. The only means of reorganizing testified to by the Debtor was through the utilization of funds which John E. Carter, Jr. testified that he and the other general partners will receive in the event of the closing of the sale of the Mandarin Manor Retirement Village and Mandarin Manor Nursing Home.

4. The Court notes that the unsigned Asset Purchase Agreements, which were introduced as Debtor's Exhibits 14 and 15, contained numerous limitations and conditions on the obligations of the purchaser and that no binder deposit, forfeitable or otherwise, has been posted by the purchaser. Based on the terms of the Asset Purchase Agreement as well as the testimony of Carter, the Court finds that there is considerable question whether funds from any such closing would be available to creditors of Carco Partnership since Carco Partnership is not a creditor of either the Mandarin Manor Retirement Village or the Mandarin Manor Nursing Home project.

5. The Court concludes that in light of the insignificant, if any, equity in the Pablo Trace Apartments, the Debtor is unable to provide GRCC with adequate protection in that (a.) the Debtor is only able to pay GRCC the monthly interest payments beginning April, 1990 at the contract rate, whereas the debt is currently accruing at a default rate; (b.) the Debtor is unable to pay the 1986–1988 real estate taxes, which are past due, or the 1989 taxes before the end of March, 1990 when they are due; and (c.) the Debtor is unable to escrow the 1990 property taxes that have accrued through March, 1990 nor those that will continue to accrue beginning in April, 1990. As such, relief from the automatic stay is appropriate under Section 362(d)(1).

6. The Court further concludes that because the Debtor has no equity in the Pablo Trace Apartments and has not carried its burden of proving that there is a reasonable probability of reorganization, relief from the automatic stay is appropri-

ate under Section 362(d)(2). *See In re Bell Partners, Ltd.,* 82 B.R. 593 (Bankr.M.D. Fla.1988); *In re Sar–Manco, Inc.,* 70 B.R. 132 (Bankr.M.D.Fla.1986).

7. The Court has also carefully considered the evidence in light of the directives of the Eleventh Circuit Court of Appeals in the cases of *In re Albany Partners,* 749 F.2d 670 (11th Cir.1984), *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987) and *In re Phoenix–Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988).

8. This Court fully understands the edict of the Eleventh Circuit that a bad faith filing is cause for relief from the automatic stay under Section 362(d)(1). *See In re Sar–Manco, Inc., supra; In re Bell Partners, Ltd., supra; In re Colonial Manor Associates, Ltd.,* 103 B.R. 315 (Bankr.M.D.Fla.1989).

9. With respect to determining bad faith in the filing of a petition, the Eleventh Circuit Court of Appeals has stated:

"... there is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Phoenix–Piccadilly, Ltd.,* 849 F.2d 1393, 1194 (11th Cir.1988), *citing In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984).

10. The Eleventh Circuit in *Phoenix Piccadilly* set out many of the circumstantial factors which have been identified by courts as evidencing bad faith filings, most of which are present in this case:

(i) The debtor has only one asset, the property, in which it does not hold legal title;

(ii) The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(iii) The debtor has few employees.

(iv) The property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The debtor's financial problems involve essentially a ˙dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

(vi) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re Phoenix Piccadilly, Ltd.,* supra, at 1395.

11. The factors listed above, and the factors in other bad faith cases, generally fall within three basic categories:

(1) Whether the debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized consistent with the congressional intent and protection afforded by Chapter 11;

(2) Whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and

(3) Whether the debtor has a realistic probability of a successful reorganization.

*In re RAD Properties, Inc.,* 84 B.R. 827, 830 (Bankr.M.D.Fla.1988).

12. Whether considered under the factors outlined in either *Phoenix Piccadilly* or those from the *RAD Properties* case, the facts herein clearly show a bad faith filing by the Debtor justifying the granting of GRCC's Motion for Relief From The Automatic Stay.

[4] 13. This Debtor is not a business enterprise that may be reorganized or rehabilitated consistent with the congressional intent and protection afforded by Chapter 11. Rather, the Debtor merely owns several pieces of failing real estate and employs only 20–25 employees, most of whom could forseeably be retained by the mortgagees of the real property during and after foreclosure. Thus the facts of this case are similar to those in *In re Bell Partners,* 82 B.R. 593 (Bankr.M.D.Fla.1988). That case also involved a shell entity that owned several parcels of failing real estate upon which foreclosure was pending. Herein, as in *Bell Partners,* such facts evidence a bad faith filing.

14. The Debtor also does not hold legal title to the Pablo Trace Apartments, which fact constitutes a classic bad faith factor under the cases. *See In re Orange Park South Partnership,* 79 B.R. 79 (M.D.Fla. 1987); *In re Eden Associates,* 13 B.R. 578 (S.D.N.Y.1981); *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988).

15. The Court also finds that the amount of unsecured debt in relation to the amount of secured debt is relatively small. Indeed, the total unsecured debt is less than 4% of the secured debt and is even less significant when one considers that $100,000.00 is owed to Mr. Carter, an insider, and in excess of $250,000.00 is owed to C & S Bank, which holds collateral owned by other parties.

16. It appears to the Court that the filing of the Petition was to forestall the loss of the Debtor's property through foreclosure in state court by GRCC. GRCC has obtained an order of the state court requiring payment of the rents from the Pablo Trace Apartments into the registry of the court. Moreover, GRCC had a receivership hearing scheduled when the Debtor's Petition was filed.

17. It is apparent to the Court that bankruptcy offered the only means for the Debtor to forestall the loss of its property. It is also obvious to the Court, that the Debtor's problems are principally with its secured creditors and that such disputes, including any claims that a forbearance agreement was reached with GRCC, should most appropriately be decided in the State Court Foreclosure Action rather than in the Bankruptcy Court. *See In re Albany Partners,* 749 F.2d 670 (11th Cir.1984); *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1193 (11th Cir.1988); *In re Little Creek Development Company,* 779 F.2d 1068 (5th Cir. 1986).

18. In addition, the evidence also shows that the Debtor has no realistic probability of being able to successfully reorganize. Any reorganization would be contingent upon the sale of the Mandarin Manor Re-

tirement Village and Mandarin Manor Nursing Home and upon the ability of the general partners of Carco Partnership to utilize any excess funds they might receive from such sales.

19. Although the Court does not believe the Debtor has equity in the property or a realistic probability of successfully reorganizing, *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988), also held that the existence of equity in the property and/or the prospects of a successful reorganization cannot transform a filing that is otherwise in bad faith under the factors set forth above into one undertaken in good faith.

20. Analyzing the specific facts of this case in light of the factors outlined in the controlling Eleventh Circuit cases, this Court now concludes that the Debtor's Petition was filed in bad faith and that such bad faith filing constitutes cause within the meaning of Section 362(d)(1) of the Bankruptcy Code mandating the lifting of the automatic stay.

21. This Court will enter a separate Order granting relief from the automatic stay for the reasons set forth herein.