**In re JACKSONVILLE RIVERFRONT DEVELOPMENT, LTD., a Florida limited partnership, f/a/k/a Riverview Music Shed, Ltd., Tax ID# 65–0561607, Debtor.**

**Bankruptcy No. 97–5353–3P1.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Nov. 10, 1997.

---

David E. Otero, Milam, Otero, Larsen, Dawson & Traylor, P.A., Jacksonville, FL, for Debtor.

Nathan D. Goldman, McGuire, Woods, Battle & Boothe, L.L.P., Jacksonville, FL, for Movant Jacksonville Shipyards, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court on Jacksonville Shipyards, Inc.'s Motion for Relief from Stay and Motion to Dismiss. Evidentiary hearings were held on September 22 and 29, 1997, and October 7, 1997. On the evidence presented, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The debtor, Jacksonville Riverfront Development, Ltd., commenced this Chapter 11 case on July 16, 1997.

2. The debtor is a Florida limited partnership whose sole asset is a parcel of real estate comprised of 27.47 acres of uplands and 16.88 acres of submerged land, commonly referred to as the Jacksonville Shipyards (the "Property"). The Property is owned and operated by the debtor and is located in Jacksonville, Florida, on the St. Johns River.

3. The debtor has continuously owned and operated the Property since February 10, 1995. The debtor has no other assets besides the Property and the improvements located thereon.

4. The debtor's business has been managed by John H. Hanan since its formation. He is the principal of the debtor, as well as a

99% shareholder of the general partner of the debtor. In addition to Mr. Hanan, the debtor has two other employees.

5. On October 6, 1994, the Property was appraised by Walter M. Lampe, Inc., at $12,500,000.00

6. On November 8, 1994, Satulah/Jacksonville Corporation, the general partner of the debtor[1], and the movant, Jacksonville Shipyards, Inc. (JSI), entered into a Real Estate Purchase Agreement for the Property. On December 15, 1994, Satulah assigned the Real Estate Purchase Agreement to the debtor with the written consent of JSI.

7. The terms of the purchase agreement required the debtor to: give JSI a one year balloon note in the principal amount of $3,777,100.00, as well as a mortgage securing the note; assume existing property taxes in the amount of $665,728.40; agree to indemnify JSI and assume existing vendor payables owed by JSI in the amount of $1,115,649.74; and, agree to indemnify JSI and assume all responsibility for then existing environmental problems.

8. Soon after the acquisition of the Property, the debtor sought to obtain investors or lenders in order to raise the necessary capital to pay off the balloon note to JSI. The debtor also attempted, unsuccessfully, to negotiate alternative terms of payment with JSI.

9. The debtor, unable to raise the necessary capital, defaulted on the note on February 16, 1996. In May, 1996, JSI initiated a foreclosure proceeding against the debtor.

10. Since the debtor acquired the Property, approximately $1,000,000 in improvements have been made to the Property. In addition, the debtor has made various unsuccessful attempts to develop the Property.

11. In June, 1996, the debtor located a group of investors, the "Schultz Group", that was interested in purchasing the note and mortgage from JSI. The debtor introduced the Schultz Group to JSI, and on July 15, 1996, the Schultz Group entered into a purchase agreement for the JSI note and mortgage. However, the Schultz Group did not consummate its agreement to purchase the balloon note from JSI.

12. On June 3, 1997, JSI noticed a hearing in the Circuit Court, Fourth Judicial Circuit, In and For Duval County, Florida, on a motion for enforcement of an assignment of rents, or in the alternative, appointment of a receiver. The debtor subsequently filed its Chapter 11 petition, and due to the automatic stay provisions of 11 U.S.C. § 362, the hearing never took place.

13. The debtor has not made any payments to JSI on the balloon note. The debtor made payments of $170,187.85 for property taxes and $8,000 for vendor payables.

14. On July 14, 1997, the Property was appraised by Lampe, Roy & Associates, Inc., as having a value of $15,048,000.00 (after subtracting estimated environmental cleanup costs).

15. At the time of its bankruptcy filing, the debtor was a defendant in a dozen other lawsuits for debts incurred by the debtor since it acquired the Property.

16. The debtor filed its Schedules and Statement of Financial Affairs on the petition date. According to the debtor's schedules, the debtor had $5,992,096.81 in secured debts and $704,765.11 in unsecured debts on the petition date. Of the secured debts, $4,624,121.69 is owed to JSI pursuant to its balloon note and first mortgage. Seventy-four thousand four hundred and twenty-three dollars and sixty cents ($74,423.60) in secured debt is owed to Laquidara & Edwards pursuant to a note and second mortgage. Secured debt in the amount of $19,122.11 is owed to LeBoeuf Lamb Greene & MacRae pursuant to a note and third mortgage. There are two judgment liens totaling approximately $50,600.00. The balance of the secured debt is owed for property taxes. The unsecured debt includes an amount owed to Clearview Investment Management, Inc. (Clearview), based on a pre-petition loan for $96,455.31.

17. On September 18, 1997, the Debtor filed a Disclosure Statement and Plan of Reorganization. Pursuant to the plan, Clearview is to acquire a 50% interest in the

---

1. Satulah has since changed its name to Jacksonville Riverfront Corporation.

debtor on confirmation. In exchange, Clearview obligates itself to abide by the terms of the confirmed plan, which includes a requirement that Clearview post $1,500,000 in collateral in the form of an irrevocable letter of credit until all plan obligations are paid.

Further, Mr. Hanan testified that the debtor will list the eastern portion of the Property for sale after confirmation, which sale will enable the debtor to pay all creditors in full on closing. Otherwise, the plan provides as follows: the debtor will pay all secured debts with interest over seven-years with a balloon payment due on the seventh anniversary of the effective date of the plan; creditors holding pre-petition settlement agreements will receive the full amount of those settlement agreements on the effective date; the balance of the unsecured claims will be paid 100% of their claims without interest over seven years; and, all environmental clean-up work will be completed during the first four years of the plan.

18. The debtor currently has three leases on the Property and is operating with a positive cash flow.

19. On August 13, 1997, JSI filed a Motion to Dismiss Or In The Alternative Relief From Stay. Subsequently, on August 19, 1997, JSI filed a Motion For Relief From Stay. JSI sought relief from the stay or dismissal for cause, pursuant to 11 U.S.C. § 362(d)(1) or 11 U.S.C. § 1112(b), to prosecute its pending foreclosure action.

2. JSI's Motion For Relief From Stay and Motion to Dismiss sought, in the alternative, relief from the stay for cause to allow JSI to commence a fraudulent conveyance action against the Debtor. JSI claimed that the Property was sold by JSI to the debtor in a nonarms-length transaction for less than reasonably equivalent value at a time when JSI was insolvent. The Court finds this issue to be moot. Subsequent to the hearing in this case, JSI brought their fraudulent conveyance claim as a counterclaim to the debtor's existing adversary proceeding against JSI in this case.

3. Those grounds are:
  (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
  (2) inability to effectuate a plan;
  (3) unreasonable delay by the debtor that is prejudicial to creditors;

*CONCLUSIONS OF LAW*

JSI's motions are predicated upon the assertion that the debtor's petition was filed in bad faith. At the hearing held on October 7, 1997, JSI, relying on *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988), argued that in a single asset real estate case the Court must lift the stay or dismiss the case for cause as a bad faith filing.[2]

11 U.S.C. § 362(d)(1) requires a court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property...." The Eleventh Circuit has established the principle that good faith is an implicit prerequisite to filing a Chapter 11 bankruptcy petition. *See In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). A debtor's lack of good faith in filing a bankruptcy petition constitutes "cause" for lifting the automatic stay. *In re O'Quinn*, 98 B.R. 86, 88 (Bankr.M.D.Fla. 1989) (citing *In re Little Creek Development Company*, 779 F.2d 1068 (5th Cir.1986)).

Additionally, a court may dismiss a case for cause pursuant to 11 U.S.C. § 1112(b). Section 1112(b) includes a list of ten grounds establishing cause for dismissal.[3] However, the list of grounds provided by section 1112(b) is not an exhaustive list of factors constituting cause. *In re Albany Partners, Ltd.*, 749 F.2d at 674 ("The pertinent legislative history states, 'The court will be able to consider other factors as they

  (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
  (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;
  (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
  (7) inability to effectuate substantial consummation of a confirmed plan;
  (8) material default by the debtor with respect to a confirmed plan;
  (9) termination of a plan by reason of the occurrence of a condition specified in the plan; or
  (10) nonpayment of any fees or charges required under chapter 123 of title 28.
11 U.S.C. § 1112(b).

arise, and use its equitable powers to reach an appropriate result in individual cases.'"). The failure to file a case in good faith also constitutes cause for dismissal pursuant to section 1112(b). *Id.* Therefore, the Court is authorized to grant JSI's Motion For Relief From Stay or Motion to Dismiss if it finds that the debtor's petition was filed in bad faith.

JSI specifically asserts the following as grounds for a finding of bad faith on the part of the debtor: (1) the debtor is guilty of improper prepetition conduct; (2) there is no realistic probability of reorganization; (3) the debtor made this filing in an attempt to stall the hearing on JSI's motion to enforce the assignment of rents and eventual foreclosure sale.

In support of its claim that the debtor's petition was filed in bad faith, JSI relies on *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1393. In *Phoenix Piccadilly,* the Eleventh Circuit Court of Appeals affirmed the District Court's decision affirming this Court's dismissal of a case for cause pursuant to section 1112(b). The Eleventh Circuit affirmed the finding of bad faith based on the presence of many circumstantial factors identified by the courts as indicating a bad faith filing:

(i) The Debtor has only one asset, the Property, in which it does not hold legal title;

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*Id.* at 1394–95 (citations omitted).

The difficulty with the application of this list of factors is that each factor is present in the majority of single asset real estate cases. The impact of the *Phoenix Piccadilly* decision in this Court has therefore been to bar the large majority of subsequent single asset real estate bankruptcy cases. *E.g., In re Bell Partners, Ltd.,* 82 B.R. 593 (Bankr. M.D.Fla.1988); *In re Brandywine Associates, Ltd.,* 85 B.R. 626 (Bankr.M.D.Fla.1988); *In re Colonial Manor Associates, Ltd.,* 103 B.R. 315 (Bankr.M.D.Fla.1989); *In re Carco Partnership,* 113 B.R. 735 (Bankr.M.D.Fla. 1990); *In re Plummer,* 115 B.R. 371 (Bankr. M.D.Fla.1990); *In re Maricamp Square Associates, Ltd.,* 139 B.R. 554 (Bankr.M.D.Fla. 1992); *In re Heald,* 140 B.R. 817 (Bankr. M.D.Fla.1992); *In re Cobblestone Associates,* 141 B.R. 245 (Bankr.M.D.Fla.1992). *But see In re O'Quinn,* 98 B.R. 86 (Bankr.M.D.Fla. 1989).

The application of the *Phoenix Piccadilly* factors to the case at hand would no doubt justify a finding of bad faith filing. The Court finds, however, that the law of *Phoenix Piccadilly* is no longer applicable in light of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394.[4] The Reform Act added the following definition of "single asset real estate":

"single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto having aggregate noncontingent,

---

4. The Court recognizes that two other bankruptcy courts in this circuit have determined that the Act does not overrule *Phoenix Piccadilly. See In re Park Forest Development Corp.,* 197 B.R. 388 (Bankr.N.D.Ga.1996) (stating that the argument that the Bankruptcy Reform Act of 1994 implicit-

ly overrules *Phoenix Piccadilly* has no merit); *In re Midway Investments, Ltd.,* 187 B.R. 382 (Bankr.S.D.Fla.1995) (concluding that the Bankruptcy Reform Act of 1994 grants additional rights to creditors in single asset cases and does not limit the *Phoenix Piccadilly* line of cases).

liquidated secured debts in an amount no more than $4,000,000.

11 U.S.C. § 101(51B). In addition, the Reform Act added a provision providing for a more expeditious handling of these single asset real estate cases. Section 362(d)(3) states that the automatic stay in a single asset real estate case will be lifted after 90 days *unless* the debtor files a plan with a reasonable possibility of confirmation, or commences payments to creditors whose claims are secured by the subject real estate.

11 U.S.C. § 362(d)(3) (emphasis added).[5]

■ This Court finds that Congress has clearly expressed its intention that the automatic stay not be lifted, and the case not be dismissed, simply because the case is a single asset real estate case. The application of the *Phoenix Piccadilly* factors to a single asset real estate case produces a result that directly conflicts with Congressional intent. The Reform Act demonstrates that Congress has not determined to uniformly deny single asset real estate debtors the right to reorganize. Accordingly, when determining whether cause exists to lift the stay or dismiss the case, the mere fact that a case is a single asset real estate case will not be the determining factor in this Court's analysis. This Court holds that the *Phoenix Piccadilly* factors are no longer applicable in deciding whether there has been a bad faith filing in a single asset real estate case.

■ In determining whether there has been a lack of good faith in this case, the Court will continue to consider factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions of the Bankruptcy Code. *In re Albany Partners, Ltd.*, 749 F.2d at 674. Factors which evidence a debtor's intent (through the filing of a petition) to delay or frustrate the legitimate efforts of secured creditors to enforce their rights will also be considered. *Id.* (citations omitted).

■ In this case, the evidence presented was insufficient to show any bad faith on the part of the debtor in filing its bankruptcy petition. The Court does not find any improper pre-petition conduct on the part of the debtor that would justify a finding of bad faith filing. Additionally, the evidence does not establish that the debtor intended to abuse the judicial process or the reorganization provisions of the Code by filing its petition. Mr. Hanan testified that the debtor intended to repay the JSI note and made substantial efforts to make alternative arrangements for payment once it became apparent that the debtor would be unable to repay the JSI note pursuant to the original payment terms. Moreover, the debtor's proposed plan evidences the debtor's desire and ability to accomplish an effective reorganization. The Court finds that the petition was filed with a sincere intent to reorganize.

■ Mr. Hanan also testified that the debtor filed its petition fully realizing that the automatic stay provisions of 11 U.S.C. § 362 would prevent the hearing on JSI's motion to enforce the assignment of rents from taking place. The Court finds that this fact alone does not evidence bad faith. The purpose of the automatic stay provisions of the Bankruptcy Code is to protect debtors. If the Court were to consider every filing made for the purpose of taking advantage of the stay provisions to be in bad faith, the protection offered by the automatic stay would be meaningless. This is not a case where the debtor seeks only to punish foreclosing creditors by forestalling their efforts to enforce their rights, nor is this a case in which a petition was filed solely to avoid an imminent foreclosure sale. *See. e.g., Phoenix Piccadilly*, 849 F.2d at 1395; *In re Heald*, 140 B.R. 817 (Bankr.M.D.Fla.1992) (finding bad faith where petition was filed less than 24 hours before scheduled foreclosure sale). Accordingly, after weighing all the relevant factors, the Court finds that the evidence

**5.** The Court is conscious of the fact that the instant case does not qualify as a "single asset real estate" case as defined under the Bankruptcy Code because the debtor's secured debts exceed $4,000,000. The Court's ruling is therefore not based on the debtor's compliance with the requirements of 11 U.S.C. § 362(d)(3). The Court's decision is based on the Reform Act's policy that single asset real estate bankruptcies are entitled to the protections of the bankruptcy process.

fails to show that this debtor's petition was filed in bad faith.

The Court finds that JSI has failed to establish sufficient cause to lift the stay pursuant to 11 U.S.C. § 362(d)(1), or to dismiss this case pursuant to 11 U.S.C. § 1112(b). Consequently, JSI's Motion to Lift Stay and Motion to Dismiss are denied. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.