**In re Izell BLUNT and Raydeen S. Blunt, d/b/a Blunt & Blunt Enterprises, Debtors.**

**Bankruptcy No. 99–1309–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 21, 1999.

John B. Macdonald, for WRH Mortgage, Inc, Jacksonville, FL, for plaintiff.

G.E.B. Williams, I., for Debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This Case came before the Court for hearing on (1) Creditor, WRH Mortgage, Inc.'s Motion to Dismiss Petition and, in the alternative, Motion to Excuse Compliance with Section 543(a),(b), and (c); (2) Debtors' Motion to Pay Salaries to Insiders, and (3) WRH Mortgage, Inc.'s Motion to Prohibit Debtors' Use of Cash Collateral. Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. On June 1, 1992, Debtors filed their voluntary petition under Chapter 11 of the United States Bankruptcy Code, commencing the case of *In re Blunt, Debtors; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, Case No.: 92-3146-BKC-3P1.* On September 14, 1994, Debtors' Chapter 11 case was converted to a Chapter 7 Case (the "Chapter 7 Case"), in which Valerie Hall Manuel was appointed the Chapter 7 Trustee (the "Trustee"). On November 28, 1994, the Trustee in the Chapter 7 Case abandoned Debtors' improved real property located at 1780 Pearce Street, Jacksonville, Florida, 32232, upon which Debtors operate the New Society Court Apartments (the "Apartments") and upon which WRH Mortgage, Inc. ("WRH") holds a Note and Mortgage.

2. Upon Debtors' default under the Mortgage, WRH instituted foreclosure proceedings on January 19, 1999, in a state court action styled *WRH Mortgage, Inc. v. Izell Blunt et al.; Circuit Court, Duval County, Florida; Case No. 99-00400-CA.* On February 23, 1999, the Circuit Court entered its Order appointing a receiver to take possession of and operate the Apartments.

3. On February 24, 1999, one day after the entry of the order appointing the receiver, but before the receiver filed his bond as a condition to his appointment and taking possession of the Apartments, Debtors filed their second voluntary petition commencing this Case under Chapter 11 of the United States Bankruptcy Code. As a result, Debtors remained in possession of and continued to operate the Apartments, and control the rents that were subject to WRH's lien. WRH had not consented to Debtors' use of the rents.

4. On April 9, 1999, WRH filed a Motion to Dismiss Debtors' Petition for Bad Faith. WRH also filed a Motion to Excuse Compliance with Section 543(a), (b), and (c). WRH subsequently withdrew its Motion to Excuse Compliance with Section 543(a), (b), and (c) as being inapplicable to this Chapter 11 Case because the state

court receiver never took possession of the Apartments.

5. On April 14, 1999, Debtors filed a Motion to Pay Salaries to Insiders, in which Debtors sought the Court's permission for payment of salary of $2,500 per month to Dr. Blunt for maintenance services for the Apartments, and $3,750 per month to Mrs. Blunt as office manager of the Apartments.

6. On May 24, 1999, WRH filed a Motion to Prohibit Debtors' Use of Cash Collateral, pursuant to 11 U.S.C. § 363(c)(2). WRH noted that it had not consented to the use by Debtors of its cash collateral in the form of the rents from the Apartments, nor had Debtors sought or obtained the Court's approval for such use. WRH also argued that Debtors commingled substantially all funds to which Debtors had access, including: (1) the security deposits collected from tenants at the Apartments, which Debtors failed to segregate and preserve as required by Florida law, (2) the operating account for the Apartments, (3) Debtors' personal banking account, and (4) the operating account for a separate apartment complex located in Jacksonville, Florida (the "38th Street Apartments"), owned by Alfred Wolf of Ft. Lauderdale, Florida.

7. On May 25, 1999, the Court held a hearing on Debtors' Motion to Pay Salaries and WRH's Motion to Dismiss. The Court heard the testimony of Mrs. Blunt, the State Court receiver, and a representative of WRH. Based upon the testimony, the Court continued the hearing until July 7, 1999, and required Debtors to become compliant with the United States Trustee Guidelines, including the establishment of all required Debtor–in–Possession accounts ("DIP Accounts"), and that Debtors file a disclosure statement and plan. The Court instructed Debtors not to use the cash collateral generated by the Apartments for any purpose until the continued hearing. WRH's Motion to Prohibit Use of Cash Collateral was subsequently noticed to be heard on July 7, 1999.

8. At the July 7, 1999 hearing, the Court noted that Debtors' disclosure statement and plan (the "Plan") had been filed on June 9, 1999. Debtors had established the required DIP Accounts and had placed all funds generated by the Apartments into the DIP Accounts, and Debtors had not used WRH's cash collateral for any personal expenses.

9. The Apartments are the sole incoming producing asset of the Estate. Debtors' remaining assets consist of their homestead located on Sandra Lane in Jacksonville, Florida, two vehicles, miscellaneous personal property, several vacant single family residences in Jacksonville, Florida, and several lots upon which other apartment complexes previously operated by Debtors were formerly located, but which were allegedly demolished by the City of Jacksonville. Debtors testified that a cause of action exists against the City of Jacksonville for damages resulting from the demolition of one or more of the former apartment complexes. The present income generated from the Apartments averages $12,500.00 per month, with a practical maximum income generating potential of $14,500.00, assuming presently unoccupied units are renovated for occupancy. Subsequent to the hearing on May 25, 1999, Mrs. Blunt gained employment as a manager of the 38th Street Apartments in Jacksonville, with a salary of $250.00 per week.

10. Debtors' living expenses average $4,000.00 per month.

11. The fair market value of the Apartments is $550,000.00.

12. Although Debtors established a separate bank account for the tenants' security deposits, funds within the account fail to replenish the security deposits previously collected and utilized by Debtors in violation of Section 83.49, Florida Statutes (1997).

13. At the July 7 hearing, Debtors decreased their salary request in their Mo-

tion to Pay Salaries to Insiders from $4,500.00 to $3,500.00 per month. The United States Trustee recommended that the maximum Debtors should receive monthly was $2,800.00. This figure represents $1,000.00 for Mrs. Blunt for her management of the Apartments, which is commensurate to her salary for comparable services provided to the 38th Street Apartments, and $1,800.00 for Dr. Blunt, equivalent to the salary Debtors had previously paid to persons whom provided comparable maintenance at the Apartments.

14. On the Motion to Prohibit Use of Cash Collateral, WRH argued that pursuant to 11 U.S.C. § 363(c)(2), WRH had not consented to the use of the cash collateral nor had Debtors sought Court approval for the use of cash collateral. Debtors offered as adequate protection $5,000.00 per month to WRH plus an agreement to pay the insurance, taxes, and reserves in the aggregate amount of $1,850.00, which Debtors argued would benefit the Apartments, thereby benefitting WRH.

15. On the Motion to Dismiss, WRH argued under 11 U.S.C. § 1112(b) that Debtors lacked good faith in filing this case and based upon Debtors' income and expenses, were unable to effectuate a confirmable plan. The Plan proposes a five-year payment stream to WRH, with a balloon payment of the balance due at the conclusion of five years. However, the Plan makes no provision as to how the balloon payment will be funded. Absent a provision for the balloon payment, WRH argued that in order the Plan to be confirmed under 11 U.S.C. § 1129(b), Debtors would have to provide deferred cash payments over the life of the Plan which total at least the allowed amount of WRH's claim, with a present value of at least the value of the Apartments.

### Conclusions of Law

■ Pursuant to 11 U.S.C. § 1112(b), the Court may dismiss this Case for cause. 11 U.S.C. § 1112(b)(1999). Section 1112(b) provides a non-exclusive list of ten grounds which constitute cause for dismissal. *Id.*; *In re Jacksonville Riverfront Development, Ltd.*, 215 B.R. 239, 242 (Bankr. M.D.Fla.1997). In addition to the enumerated grounds for dismissal in Section 1112(b), a court can consider the debtor's lack of good faith in the filing of a case. *Jacksonville Riverfront*, 215 B.R. at 243. In *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988), the Eleventh Circuit enunciated several factors considered to be indicia of a bad faith filing.[1] This Court has previously applied the *Phoenix Piccadilly* factors as indicative of a bad faith filing in the context of single asset real estate cases. *See, e.g., In re Plummer*, 115 B.R. 371 (Bankr.M.D.Fla.1990). Although the *Phoenix Piccadilly* factors are no longer applicable in a single asset real estate case in light of the Bankruptcy Reform Act of 1994, "[i]n determining whether there has been a lack of good faith ..., the Court will continue to consider factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions of the Bankruptcy Code," including evidence of debtor's "intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Jacksonville Riverfront*, 215 B.R. at 243–44 (Bankr.M.D.Fla.1997).

---

1. These factors include:
 (i) The Debtor has only one asset, the Property, in which it does not hold legal title;
 (ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;
 (iii) The Debtor has few employees;
 (iv) The Property is the subject of a foreclosure action as a result of arrearage on the debt;
 (v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and
 (vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.
*Id.* at 1394–95.

■ In its Motion to Dismiss, WRH requests that the Court dismiss this Case for cause including the continuing loss and diminution of the Estate, Debtors' inability to effectuate a plan, unreasonable delay by Debtors which has prejudiced WRH and other creditors of the Estate, and Debtors' lack of good faith in filing the Case.

In applying the factors enunciated in *Phoenix Piccadilly,* as considered relevant in *Jacksonville Riverfront,* it is apparent that Debtors lacked good faith in filing this Case, as evidenced by their intent to abuse the judicial process and the purposes of reorganization provisions of the Bankruptcy Code, and their intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. Debtors have only one income producing asset, the Apartments. The Apartments are subject to multiple liens, and Debtors have no equity in the Apartments. As a result of the discharge entered in the Debtors' Chapter 7 Case, Debtors have few unsecured creditors. Debtors have no employees. Dr. Blunt and Mrs. Blunt provide all maintenance and managerial services for the Apartment. Debtors' financial problems involve the two-party dispute between WRH and Debtors, which can best be resolved in the State Court foreclosure proceedings instituted by WRH. Debtors' filing of this Case one day after the appointment of the receiver in State Court and on the eve of the receiver taking possession and control of the Apartments, evidences an intent to delay or frustrate the legitimate efforts by WRH to enforce its rights.

In addition to Debtors' lack of good faith in the filing of this Case, the Court concludes that cause exists for the dismissal of this Case under the enumerated provisions of Section 1112(b). Addressing a debtor's inability to effectuate a plan under Section 1112(b)(2), in *In re Austin Ocala Ltd.,* 150 B.R. 279, 282 (Bankr.M.D.Fla.1993), this Court denied a motion to dismiss a Chapter 11 case under Section 1112(b), finding that upon the relevant facts a "core for a workable plan of reorganization exists." Upon a review of Debtors' proposed Plan and Disclosure Statement, the Court concludes that this Case is missing the "core," therefore, a workable plan of reorganization does not exist. Unlike *Austin Ocala,* the facts of this Case do not indicate that Debtors are successfully operating the Apartments, or that they have the ability to make any meaningful payments to WRH or their remaining creditors.

Debtors' only income-producing asset, the Apartments, generates insufficient cash flow to fund a plan capable of confirmation under Section 1129(b) which would provide adequate payment to WRH and Debtors' remaining creditors, and still provide Debtors sufficient funds with which to live. On their Schedule "D," Debtors scheduled WRH's claim in the amount of $830,010.81. Based upon WRH's appraisal, the fair market value of the Apartments is $550,000.00. Therefore, in order to meet the requirements for confirmation under 11 U.S.C. § 1129(b), the deferred cash payment would have to be at least $10,000.00 per month. This would leave Debtors a maximum of $4,500.00 to pay taxes, insurance, operational reserves in connection with the Apartments and to pay other secured and unsecured creditors. This amount would also be needed to replenish the account holding the tenants' security deposits as required by Florida law, and to provide funds upon which Debtors could live.

In addition to Debtors' inability to effectuate a plan, the Court concludes that there exists a continuing loss to or diminution of the Estate. This continuing loss to or diminution of the Estate is evidenced by mounting unpaid administrative expenses, deferred maintenance, an absence of a reasonable likelihood of rehabilitation, and an unreasonable delay by Debtors that is prejudicial to the creditors of the Estate, all of which constitute specific instances of cause as enumerated under Section 1112(b).

Based upon the testimony of Debtors and the evidence presented, and a thorough review of both the Plan and Disclosure Statement, cause exists to dismiss this Case. There is no reason to continue this Case, as Debtors have no ability to effectuate a Chapter 11 plan capable of confirmation. Debtors' sole reason for the filing of this Chapter 11 Case was to obtain the release of the Apartments from the receiver appointed in the State Court foreclosure action, and thereby to obtain possession of the rents for their own personal affairs. Therefore, it is in the best interest of the creditors and the Estate to remove the Case from Chapter 11.

 The Court must now determine, based on its sound discretion, whether or not to convert this Case to a case under Chapter 7 or to dismiss the Case outright. *See, In re Maricamp Square Assoc., Ltd.,* 139 B.R. 554, 557 (Bankr.M.D.Fla.1992) (providing that Section 1112(b) gives the Court discretion to make an appropriate disposition of the case when a party in interest requests, but is not bound to grant only the relief requested). Because a cause of action may exist against the City of Jacksonville, a potential asset of the Estate that may benefit creditors, the Court believes it is in the best interest of the creditors and the Estate to convert the Case to a Chapter 7 case, upon which a Chapter 7 Trustee can take possession of the assets of the Estate for appropriate administration. A separate order consistent with these Findings of Fact and Conclusions of Law will be entered.