**In re A.Z. SERVICES, INC., Debtor.**

**Bankruptcy No. 97–31094–BKC–SHF.**

United States Bankruptcy Court,
S.D. Florida.

April 22, 1997.

Craig V. Rasile, Holand & Knight, Miami, Florida, for Shell Oil Co.

Chad S. Paiva, Cohen, Conway, Copeland & Paiva, Stuart, Florida, for A.Z. Services, Inc.

## ORDER GRANTING MOTION TO DISMISS CHAPTER 11 PROCEEDING AND GRANTING RELIEF FROM STAY

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came on to be heard on April 18, 1997 upon the Emergency Motion to Dismiss or, Alternatively, for Relief from Automatic Stay, filed by Shell Oil Company ("Shell"). The Debtor filed a Response in opposition to Shell's motion, and Shell's motion, originally scheduled for Monday, April 7th, was reset for April 18th in order to afford the Debtor ample opportunity to prepare for the hearing. This Court, having carefully considered Shell's motion and the Debtor's Response, together with the evidence presented and argument of counsel, and being otherwise fully advised in the premises, **dismisses** this chapter 11 proceeding **with prejudice for a one year period,** and further, reserves jurisdiction to consider the propriety of awarding sanctions against

the Debtor and/or its counsel pursuant to Bankruptcy Rule 9011.

### HISTORY OF PRIOR DISTRICT COURT LITIGATION

This chapter 11 proceeding was commenced in reaction to litigation pending between the Debtor and Shell before the United States District Court for the Southern District of Florida. The Debtor is Shell's lessee under a Dealer Agreement and Motor Fuel Station Lease relating to premises located at 5 North Federal Highway, Deerfield Beach, Florida. The Debtor's president, Antonio Zaldumbide, has operated a service station from the subject premises during the last fourteen years. Also, Mr. Zaldumbide, either individually or through A.Z. Services, Inc., owns and operates another Shell Service Station in Westminster, California, together with a Chevron Service Station in Costa Mesa, California. Mr. Zaldumbide has owned and operated the California service stations for nine years and seven years, respectively. The Debtor's corporate stock is owned, in equal proportions, by Antonio Zaldumbide, his wife Anna Maria, his daughter Michelle, his son Anthony, and Majeed Akhavi. However, it is clear that Mr. Zaldumbide is the primary decision-maker for the Debtor.

### HISTORY OF DISTRICT COURT LITIGATION

Although the Debtor ostensibly owns and operates three gasoline service stations,[1] it is the controversy between the Debtor and Shell relating to the Deerfield Beach facility that has precipitated the filing of this bankruptcy proceeding. The controversy stems from a dispute between the Debtor and Mr. Zaldumbide and Shell, relating to the gasoline pricing and service station rental policies of Shell. This Court need not rehash the details of this dispute, as they are meticu-

---

1. The Dealer Lease, Dealer Supply Contracts and Convenience Store Dealer Lease for the service station located at 2160 Harbor Boulevard, Costa Mesa, California, all are executed by and between Chevron U.S.A. Inc. and Antonio Zaldumbide (individually). There is no documentary evidence reflecting whether the Westminster, California facility, known as A–Z Shell Mini Mart and located at 15501 Beach Boulevard in Westminster, California, is owned and operated under the Debtor's name or under Mr. Zaldumbide's name. Thus, at least as to the Chevron facility in Costa Mesa, California, it appears that the facility is owned and operated by Mr. Zaldumbide personally.

lously recited both in the Report and Recommendation entered by Chief United States Magistrate Judge William C. Turnoff on November 15, 1996, in the case of *Shell Oil Company v. A.Z. Services, Inc., etc.,* Case No. 96–6921–CIV–MORENO, and in Judge Moreno's February 11, 1997 Memorandum Opinion. Judge Moreno concurred with the conclusions reached by Chief Magistrate Judge Turnoff, and by a subsequent order, directed the Debtor and its officers, agents, etc., to terminate the petroleum marketing franchise with Shell Oil Company and vacate the Deerfield Beach, Florida premises no later than Monday, March 10, 1997 at 5:00 P.M. The Debtor appealed Judge Moreno's ruling to the Eleventh Circuit Court of Appeals, but the appeal was stayed by the Eleventh Circuit following the commencement of the instant chapter 11 proceeding on March 10th, 1997.

## *ANALYSIS*

■ As noted above, on February 28, 1997, District Court Judge Moreno modified his prior order granting a preliminary injunction in favor of Shell, effectively staying the effect of the preliminary injunction until March 10, 1997. The Debtor, faced with the unfavorable ruling of the District Court, could have chosen: (1) to comply with the February 28th Order and vacate the Deerfield location by March 10th; (2) to pursue an appeal of Judge Moreno's order to the Eleventh Circuit Court of Appeals and to request a further stay pending appeal by the Eleventh Circuit, in accordance with F.R.A.P. 8(a); or to invoke the jurisdiction of this Court by filing a chapter 11 petition. By proceeding in this Court, the Debtor has chosen unwisely.

Although the Debtor contends that it is in legitimate need of restructuring its finances, there can be little doubt that the Debtor's overriding objective in commencing this bankruptcy proceeding was to further stymie Shell's efforts in regaining possession of its property following termination of the Dealer Agreement and Motor Fuel Station Lease with the Debtor. The suit between the Debtor and Shell relating to the operation of the Deerfield facility has been pending since August, 1996. Chief Magistrate Judge Turnoff issued his Report and Recommendation on November 15, 1996, followed by District Court Judge Moreno's Memorandum Opinion of February 11, 1997. Yet the Debtor, allegedly beset by various financial problems necessitating its chapter 11 filing, waited until the deadline date set by Judge Moreno for vacating the Deerfield Beach premises to commence this chapter 11 proceeding.

The Debtor counters that its business encompasses a multi-faceted operation with three locations, 15 employees (not including Mr. Zaldumbide or his wife and son) and a monthly payroll of $15,000 per month. The Debtor further contends that for the first three months of 1997, the Debtor has sold more than 1.1 million gallons of fuel from its Deerfield Beach location, and more than 900,000 gallons of fuel from its two California locations. Thus, the Debtor argues that, unlike other chapter 11 cases deemed to have been filed in bad faith, this Debtor owns an operating business generating substantial cash flow with a significant number of employees. The Debtor also asserts that its bankruptcy filing was precipitated not only by its dispute with Shell, but also by outstanding financial obligations to the State of California—Board of Equalization ($300,000 minimum—unpaid fuel taxes 1993–1996), State of Florida—Department of Revenue ($49,000—unpaid fuel taxes for 1989 through 1995), Chevron Products Company ($18,-421.22—gasoline purchases) and Shell Oil Company ($35,243.67—gasoline purchases). However, the linchpin of the Debtor's operation is its Deerfield Beach operation. This location generates 51% of the Debtor's revenues.

■ Since the Debtor's decision to discontinue its sale of Shell brand petroleum products from the Deerfield Beach location and to affiliate with Skipper's Choice, a competing petroleum products distributor, the Debtor claims to have markedly increased its sales volume. However, the sale of Skipper's Choice products from the Deerfield Beach location violates Shell's Dealer Agreement and Motor Fuel Station Lease, as previously determined by the District Court. As a general rule, it is impermissible for a debtor to

file a chapter 11 petition solely to enable it to continue litigating a non-bankruptcy dispute without the necessity of posting a supersedeas bond. *In re Karum Group, Inc.*, 66 B.R. 436 (Bankr.W.D.Wash.1986); *In re Harvey*, 101 B.R. 250 (Bankr.D.Nevada 1989). The Debtor counters by contending that there exist other factors which gravitate against dismissal of this case, which factors have been delineated by the Eleventh Circuit in its decisions of *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988) and *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). In *Phoenix Piccadilly*, the Eleventh Circuit identifies several circumstantial factors which evidence a bad faith filing, which include:

(1) The Debtor has only one asset, consisting of the property at issue;

(2) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(3) The Debtor has few employees;

(4) The property is the subject of a foreclosure action; and

(5) The Debtor's financial problems involve essentially a dispute between the Debtor and a secured creditor which can be resolved in an independent non-bankruptcy forum.

The Debtor contends that it has significant unsecured creditors, many employees, and other property interests consisting of its two California service stations which are not the subject of its current controversy with Shell. However, an examination of the Debtor's Amended Schedule F reflects that, in actuality, the Debtor has very few unsecured creditors. The Debtor lists five unsecured creditors, all of whom have extended credit or sold merchandise to the Debtor during the thirty-eight day period immediately preceding the bankruptcy filing, for merchandise utilize by the Debtor in the ordinary course of its business. Thus, other than Shell, the Debtor's only significant unpaid creditors are the State of California—Board of Equalization, and the State of Florida—Department of Revenue, for unpaid fuel taxes. In addition, the Debtor's most successful service station operation is its Deerfield Beach location, which is the subject of the dispute with

Shell. Indeed, Mr. Zaldumbide acknowledged that without the Deerfield Beach service station, the Debtor could not generate sufficient revenues to continue its operation of its other locations in California.

In *Phoenix Piccadilly*, the Eleventh Circuit, in questioning the Debtor's motive for filing its bankruptcy petition, alluded to the Debtor's correspondence to its limited partners advising them of the Debtor's intent to posture the Debtor "to make whatever legal defenses are appropriate to forestall Future Federal actions, including, if advisable, the filing of a chapter 11 bankruptcy petition." Similarly, the Debtor posted notices on its gasoline pumps advising its customers of its claims of unfair discriminatory prices and unethical corrupt practices perpetrated by Shell, and of its chapter 11 bankruptcy filing undertaken "in order to protect it from a hostile takeover by Shell Oil Company." Although this Debtor may face severe financial consequences if its Deerfield franchise is lost, its fortunes are inextricably tied to the Shell litigation and should not be aired before this Court. "Where the primary purpose of a Chapter 11 filing is as a litigation tactic, the petition may be dismissed for a lack of good faith." *In re C–TC 9th Avenue Partnership*, 193 B.R. 650, 654 (Bankr. N.D.N.Y.1995). Such are the circumstances presently before this Court. Accordingly, it is hereby

**ORDERED** that Shell's Motion to Dismiss is **granted,** and this case is **dismissed** with prejudice for a one year period. It is further

**ORDERED,** for the reasons set forth above, that stay of relief is **granted** in accordance with 11 U.S.C. § 362(c)(2)(B) and § 362(d)(1) to proceed with the Federal District Court litigation pending in the Southern District of Florida, and the appeal thereof to the Eleventh Circuit Court of Appeals; and it is further

**ORDERED** that this Court shall conduct a hearing on **Monday, May 19, 1997 at 1:30 P.M.** at the Paul G. Rogers Federal Building, 701 Clematis Street, Courtroom 6, West Palm Beach, Florida, to consider the propriety of awarding sanctions against the Debtor and its counsel pursuant to F.R.C.P. 11 and

**582**

Bankruptcy Rule 9011, and to determine the amount of such sanctions.