## In re VENICE–OXFORD ASSOCIATES LIMITED PARTNERSHIP, Debtor.

Bankruptcy No. 97–9831–8G1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 17, 1998.

Russell M. Blain, Wanda H. Anthony, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Venice–Oxford Associates Limited Partnership.

Paul Bennett Bran, Guy S. Neal, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for Venice–Oxford Associates Limited Partnership.

Gregg W. McClosky, Michael J. Ioannou, Mattlin & McClosky, Boca Raton, FL, for Multifamily Mortgage Trust 1996–1 and LaSalle National Bank.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY

PAUL M. GLENN, Bankruptcy Judge.

THIS CASE came before the Court to consider the Motion for Relief from Automatic Stay filed by Multifamily Mortgage Trust 1996–1 and LaSalle National Bank (Movants). The Motion is filed pursuant to Section 362(d)(1) and Section 362(d)(2) of the Bankruptcy Code. Movants assert that they are entitled to relief from the stay under Section 362(d)(1) for "cause," based on the Debtor's lack of good faith in filing the bankruptcy petition. Movants also assert that they are entitled to relief from the stay under Section 362(d)(2) because the Debtor has no equity in the property at issue, the property is not necessary to an effective reorganization, and the Debtor is unable to propose a feasible plan of reorganization.

The Debtor filed a written Response to the Motion. In response to the Movants' claim under Section 362(d)(1), the Debtor asserts that the Chapter 11 case is not objectively futile and was not filed in subjective bad faith. The Debtor further as-

serts that the Movants' interest in the property at issue is adequately protected in that (1) the property is not declining in value; (2) the property is insured; and (3) the Debtor has offered to provide adequate protection for its use of the rents generated from the property. In response to the Movants' claim under Section 362(d)(2), the Debtor asserts that (1) the property is necessary for an effective reorganization; and (2) the Debtor is able to propose a confirmable plan of reorganization.

### The Pleadings

In the Motion for Relief from Automatic Stay, Movants allege that the Debtor is the owner of a 180–unit apartment complex located in Sarasota County, Florida (the Property). On October 27, 1982, the Debtor executed a Mortgage Note and Mortgage encumbering the Property, and the Note and Mortgage were assigned to the Movants on June 24, 1996. Pursuant to the Mortgage, Movants claim to hold the first mortgage on the Debtor's apartment complex. Movants further allege that the Debtor is in possession of the Property, but that the complex is managed by a separate management company known as NHP Property Management, Inc.

According to the Movants, the Debtor initially defaulted under the Note and Mortgage in 1995, and the Debtor has remained in default since that time. On August 12, 1996, Movants filed an action to foreclose the Mortgage in the Circuit Court for Sarasota County, Florida. On October 16, 1996, the Circuit Court entered an Order in the foreclosure action requiring the Debtor to deposit "Net Rents" derived from the property, as "Net Rents" are defined in the Order, into a joint account with the Movants. On February 13, 1997, the Circuit Court entered a Final Judgment of Foreclosure in the foreclosure action. The amount of the Final Judgment entered against the Debtor was $6,693,567.50. The Final Judgment included a provision in which the Movants were declared the owners of all rents arising

from the Property that were previously collected by the Debtor, in addition to all rents generated from the Property after the date of the Judgment. The foreclosure sale was scheduled for March 14, 1997.

The Debtor filed its petition under chapter 11 of the Bankruptcy Code on March 7, 1997.

In its Response, the Debtor asserts that the apartment complex was 92.7 percent occupied as of March 1, 1997, less than a week prior to the filing of the bankruptcy petition. The Debtor also asserts that it had entered into a Housing Assistance Payment contract with the United States Department of Housing and Urban Development (HUD), effective October 27, 1982, for a period of twenty years. Under this contract, the Debtor is obligated to provide 20 percent of its housing units to persons entitled to receive housing assistance payments under federal law, and the Debtor contends that it continues to rent 20 percent of its units to federally subsidized tenants. Nevertheless, the Debtor asserts that the income generated from the rental of its units is sufficient to pay all of its operating expenses, other than the full of amount of its debt service to the Movants.

The Debtor acknowledges that it employs NHP Property Management, Inc. (NHP) as its property management and leasing agent, and states that NHP is a publicly traded corporation that manages properties nationwide.

### Stipulated Facts

At the commencement of the evidentiary hearing, the parties stipulated as to the existence of certain facts in this case. The stipulated facts are as follows:

1. The Debtor has no employees. Generally, NHP operates the day-to-day business of the apartment complex.

2. The apartment complex is the principal asset of the Debtor. Other than the real property, the Debtor owns only minimal personal property, consisting

primarily of a vehicle and a certificate of deposit.

3. The amount owed by the Debtor to the Movants pursuant to the Final Judgment of Foreclosure is $6,693,567.50.

4. The hearing to consider the Movants' Motion for Summary Judgment in the foreclosure action was conducted on February 13, 1997, and the Final Judgment was entered on February 13, 1997.

5. The foreclosure sale was scheduled for March 14, 1997.

6. The Debtor filed its petition under chapter 11 of the Bankruptcy Code on March 7, 1997.

7. The chapter 11 petition was executed on behalf of the Debtor in September of 1996.

8. If affiliates of the Debtor are excluded from the list of the Debtor's creditors, the Debtor's unsecured debt totals less than $100,000. In addition to its unsecured debt, the Debtor has four secured creditors and an obligation for property taxes.

9. The Debtor has no equity in the property.

The Movants contend that the stipulated facts establish all of the indicia of bad faith outlined by the Eleventh Circuit Court of Appeals in *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988). Consequently, following the presentation of the stipulated facts, the Movants did not present any additional evidence in their case in chief regarding the request for relief from the automatic stay for "cause" under Section 362(d)(1) of the Bankruptcy Code.

### Burden of Proof

Section 362(g) of the Bankruptcy Code allocates the burden of proof with respect to motions for relief from the stay under Section 362.

### § 362. Automatic stay

. . .

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

In this case, therefore, since the Debtor and the Movants stipulated that the Debtor has no equity in the Property, Section 362(g) places the burden of proof on the Debtor with respect to the remaining issues raised in the Motion.

### The Testimony

The Debtor presented two witnesses to establish its position that the Chapter 11 petition was not filed in bad faith, and that the Debtor will be able to effectively reorganize.

First, Mark Schifrin (Schifrin) testified with respect to the Debtor's reasons or motives for filing the petition, as well as the historical basis to believe that the Debtor is able to propose a successful Chapter 11 plan. Schifrin signed the Chapter 11 petition as executive vice president of OAMCO XVI, L.L.C. OAMCO XVI, L.L.C. is a general partner of the Debtor limited partnership. The Debtor is also affiliated with Oxford Realty Financial Group, Inc. (Oxford Realty) which develops apartment complexes or other multifamily residential complexes in various states.

Schifrin testified that a primary objective in the decision to file the Chapter 11 petition was to protect the investments of the limited partners of the Debtor. It appears that the limited partners may incur a substantial tax liability if they are divested of the value of their partnership interest through the foreclosure of the Property.

Schifrin further testified that he actually signed the bankruptcy petition on behalf of the Debtor in September of 1996, which was shortly after the Movants filed the foreclosure action in August of 1996, but

approximately five months before the Final Judgment of Foreclosure was entered, and approximately six months before the scheduled foreclosure sale. He testified that the petition was executed at that time in part because of a pending motion to appoint a receiver in the foreclosure action and in part to "be prepared," but that the Debtor did not want to file the petition if the bankruptcy could be avoided because it hoped to concentrate on its business of providing housing.

Finally, Schifrin testified that Oxford Realty, as the general partner of various limited partnerships, has filed twenty-five bankruptcy cases since the 1980's, all with asset and employee structures that were "substantially similar" to that of the Debtor. Of the twenty-five cases, Schifrin testified that plans of reorganization were confirmed in twenty-four of the cases filed. In all but two of the cases, the secured lender consented to confirmation of the Chapter 11 plans.

The second witness presented by the Debtor was Carol Kohl (Kohl). Kohl is a vice president of OAMCO XVI, L.L.C., and an investment manager who oversees the respective management companies for designated properties, including the Debtor's Property, and whose responsibilities involve the day-to-day operations and finances of the properties. Kohl testified that the Debtor is complying with all of the requirements of the Bankruptcy Code and Chapter 11 guidelines, except the payment of quarterly fees to the United States Trustee. The nonpayment of the fees is attributed to the dispute with the Movants over the Debtor's use of the rents derived from the Property.

Kohl also testified that the Debtor filed its Plan of Reorganization and Disclosure Statement within the exclusive period set forth in the Bankruptcy Code, and that she assisted with the cash flow statement and economic analysis submitted with the Plan. Kohl testified that sufficient funds will be available to pay the Debtor's creditors in accordance with the Plan. On cross-examination, however, Kohl testified that the Plan contemplates funding from two primary sources. One source consists of a proposed capital contribution from equity interest holders, and the other source consists of the cash generated from the operation of the apartment complex. Of these two sources, the primary source appears to be the rents collected from the future operation of the Property, with the capital contribution constituting only a secondary source of funds. Consequently, in the event of a judicial determination that the rents are not property of the chapter 11 estate and therefore not available for use by the Debtor, Kohl testified that the Plan as drafted is not feasible.

## Discussion

### A. Section 362(d)(1).

Movants contend that they are entitled to relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code for "cause." In this case, Movants contend that "cause" consists of the Debtor's lack of good faith in filing its bankruptcy petition. To establish the Debtor's lack of good faith, Movants rely on the decision of the Eleventh Circuit Court of Appeals in *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988). Movants claim that the six factors identified in *Phoenix Piccadilly* as circumstantial factors evidencing a bad faith filing are established in this case by the stipulated facts recited above. Movants also claim that the Debtor's admitted purpose in filing the bankruptcy petition was to protect its investors from a potential tax liability, rather than to protect the Debtor's creditors, and that such a purpose is an improper use of the chapter 11 process. Since *Phoenix Piccadilly* is the controlling law in this Circuit, and since the Debtor's stated purpose for the chapter 11 is improper, Movants claim that the automatic stay should be lifted based on the Debtor's lack of good faith.

The Debtor acknowledges the "circumstantial factors" listed in *Phoenix Picca-*

*dilly,* but contends that the case under consideration is not the type of case that the Eleventh Circuit decision was intended to reach. Unlike *Phoenix Piccadilly,* no elements of subjective bad faith exist in this case. The Debtor is operating a conventional, ongoing business, and the Debtor's apartment complex has maintained an occupancy rate of more than 90 percent. No charges of mismanagement or intentional wrongful conduct have been asserted against the Debtor. Instead, the Debtor asserts that its financial condition simply stems from its overleveraged debt structure, a product of the original loan transaction in 1982. The Debtor states that it now wishes to restructure that debt, a use of chapter 11 fully intended by the Bankruptcy Code. Finally, the Debtor contends that, even if a purpose of the chapter 11 petition had been to protect the interest of its investors, that such investors hold "claims" against the estate, and that the treatment of those claims is a permitted use of chapter 11.

Regarding the determination of bad faith in the filing of a Chapter 11 petition, the Eleventh Circuit Court of Appeals stated:

> [T]here is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."

*In re Phoenix Piccadilly,* 849 F.2d at 1394 (quoting *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984)).

 Accordingly, bad faith in the filing of a petition is the intent to abuse the judicial process and the purposes of the reorganization provisions, and the intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. There is no particular test for determining

bad faith in the filing of a petition. Any factors which indicate bad faith are factors to be considered by the Court.

 The six factors listed by the Eleventh Circuit Court of Appeals were factors which previously had "been identified by the courts as evidencing a bad faith filing." *In re Phoenix Piccadilly,* 849 F.2d at 1394. The Eleventh Circuit does not appear to suggest, however, that the list is intended as a mandatory and exclusive itemization of factors to be mechanically applied in every determination of good or bad faith. In *Phoenix Piccadilly* itself, for example, the Court noted that the bankruptcy court had focused on evidence that the debtor's principals had made statements to its secured creditor reflecting the principals' intention to forestall the creditor "for years" by filing a bankruptcy case in an inconvenient venue. The debtor in that case did in fact file its petition more than 700 miles from the location of its property, its creditors, and pending state court litigation, a choice which the Eleventh Circuit indicated "may itself be evidence of bad faith." *Id.* at 1395.

In *In re Clinton Fields, Inc.,* 168 B.R. 265 (Bankr.M.D.Ga.1994), the Bankruptcy Court stated:

> Movant urges that the presence of the factors outlined in *Phoenix Piccadilly* should result in a finding of bad faith as a matter of law. This assertion is incorrect as a matter of law. The factors cited by both the Eleventh Circuit and other courts are guidelines for the exercise of the Court's sound discretion. Bad faith in the filing of a bankruptcy petition is a finding of fact not subject to any per se approach.

*Clinton Fields,* 168 B.R. at 269. In fact, in *Clinton Fields,* the court set forth additional "positive factors which may be indications of good faith," or factors which may evidence "a debtor's legitimate motivation for Chapter 11 relief," which should also be considered in assessing the facts of a case.

Further, while the circumstantial factors set forth in *Phoenix Piccadilly* continue to provide guidance for determining whether a bankruptcy petition was filed in bad faith, Courts have retreated from a rigid application of the factors in favor of a fact-intensive inquiry that focuses on whether a debtor intended to abuse the judicial process and the purposes of the reorganization provisions. At the hearing in this case, for example, the Movants cited Judge Proctor's decision in *In re Colonial Manor Associates, Ltd.*, 103 B.R. 315 (Bankr. M.D.Fla.1989) as a case involving an apartment complex in which the court applied the *Phoenix Piccadilly* factors and modified the automatic stay. Judge Proctor recently revisited the *Phoenix Piccadilly* factors in the context of a single asset case, however, and concluded that "the law of *Phoenix Piccadilly* is no longer applicable in light of the Bankruptcy Reform Act of 1994." *In re Jacksonville Riverfront Development, Ltd.*, 215 B.R. 239, 243 (Bankr.M.D.Fla.1997). Pursuant to the Bankruptcy Code following the enactment of the Bankruptcy Reform Act of 1994, "single asset real estate" is now specifically defined in Section 101(51B), and Section 362(d)(3) contains specific provisions regarding the stay of an action against such single asset real estate. Judge Proctor acknowledged in *Jacksonville Riverfront* that other cases have held that the Reform Act did not overrule *Phoenix Piccadilly*, and that the debtor in the case before him did not qualify as a "single asset real estate" debtor under Section 101(51B). The court was persuaded by the policy expressed in the Reform Act, however, that "single asset real estate bankruptcies are entitled to the protections of the bankruptcy process." *Jacksonville Riverfront*, 215 B.R. at 244 n. 5.

This Court finds that Congress has clearly expressed its intention that the automatic stay not be lifted, and the case not be dismissed, simply because the case is a single asset real estate case. The application of the *Phoenix Piccadilly* factors to a single asset real estate case produces a result that directly conflicts with Congressional intent. The Reform Act demonstrates that Congress has not determined to uniformly deny single asset real estate debtors the right to reorganize. Accordingly, when determining whether cause exists to lift the stay or dismiss the case, the mere fact that a case is a single asset real estate case will not be the determining factor in this Court's analysis....

In determining whether there has been a lack of good faith in this case, the Court will continue to consider factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions of the Bankruptcy Code. (Citation omitted). Factors which evidence a debtor's intent (through the filing of a petition) to delay or frustrate the legitimate efforts of secured creditors to enforce their rights will also be considered.

*Id.* at 244. In that case, the Court did not find any evidence of improper prepetition conduct, or any evidence that the debtor intended to abuse the reorganization process, and declined to modify the stay. *Id.*

In this case, the Court finds that the Chapter 11 petition was not filed in bad faith, and that the relief requested by the Movants under Section 362(d)(1) is not warranted. Although this case does present many of the factors that have been considered in making determinations of bad faith, the Court is satisfied that the case does not represent "an intent to abuse the judicial process and the purposes of the reorganization provisions."

The Debtor has owned and operated the apartment complex since 1982, and has maintained an occupancy rate of more than 90 percent at the apartment complex since the filing of the bankruptcy petition. According to the Debtor, the occupancy rate at the time of filing was approximately 92.7 percent. The Debtor's monthly reports filed with the Court reflect that the Debtor's income for the last six months of 1997

ranged between $80,000 and $150,000 per month, and exceeded its disbursements (without payments to the Movants) in each month except one. The Debtor has engaged a management company to perform the daily, traditional functions of operating an apartment complex. No evidence suggests any wrongdoing by the Debtor or its principals either before or after the filing of the petition, or any unusual or suspect transfers or transactions before the case was filed. This is not a case in which the Debtor was formed shortly before the petition was filed, so that the case is not tainted with the "new debtor syndrome." See *In re Dunes Hotel Associates*, 188 B.R. 162, 172 (Bankr.D.S.C.1995). Nor is this a case in which the Debtor revealed an improper subjective motive to file the petition by taking any vengeful action against its creditors. See *In re A.Z. Services, Inc.*, 208 B.R. 578, 581 (Bankr.S.D.Fla. 1997).

■ On the contrary, this appears to be a straightforward case in which the Debtor experienced financial difficulties and faced the potential loss of its primary asset through the foreclosure action. The Debtor filed the chapter 11 petition to prevent the loss, a permitted use of the bankruptcy system. *Dunes Hotel*, 188 B.R. at 172. The Debtor has filed a plan of reorganization and disclosure statement which proposes a restructuring of the Debtor's secured debt, with payments under the plan to be funded by future income from operations and capital contributions from the Debtor's investors.

The Court concludes that the case was not filed in bad faith, and that the Debtor should be given an opportunity to reorganize.

**B. Section 362(d)(2).**

■ Movants contend that they are entitled to relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code because the Debtor has no equity in the property, the property is not necessary to an effective reorganization, and the Debtor is unable to propose a feasible plan of reorganization. The parties stipulated that the Debtor has no equity in the property. The Debtor contends, however, that the apartment complex is necessary for an effective reorganization, and that an effective reorganization is possible in this case.

The District Court in this district has addressed the standard for determining whether property is "necessary to an effective reorganization" under Section 362(d)(2):

> The appropriate test for determining whether collateral is "necessary to an effective reorganization" is (1) whether the collateral is, in fact, necessary to his reorganization efforts, and (2) there is a reasonable possibility of a successful reorganization within a reasonable time.

*Farm Credit of Central Florida, ACA v. Polk*, 160 B.R. 870, 874 (M.D.Fla.1993). See *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The secured creditor in *Polk* contended that the debtor's plan in that case was no more than a financial "pipe dream" based only on the debtor's "high hopes," and that the plan was not feasible or confirmable. The District Court, however, declined to apply the feasibility standard for confirmation under Section 1129 in determining whether property is "necessary to an effective reorganization" under Section 362(d)(2).

> Farm Credit cites no authority for the proposition that feasibility is a requirement under § 362(d)(2)(B). This Court concurs with the Bankruptcy Court's determination that the appropriate time to evaluate feasibility is when the Bankruptcy Court decides whether the plan should be confirmed. 11 U.S.C. § 1129.

*Polk*, 160 B.R. at 874. The Bankruptcy Court in *Polk* had considered the alternatives that were available to the debtor to fund his plan of reorganization because of special excavating opportunities associated

with the property that he owned, and therefore found that the property was necessary to an "effective reorganization." *Id.*

In this case, the first prong of the test set forth by the District Court is clearly satisfied. Since this is essentially a single asset case, that single asset (the apartment complex) obviously is necessary to the Debtor's reorganization efforts.

■ The Court further finds that the second prong of the test is also satisfied. In accordance with the District Court's ruling in *Polk*, it is not necessary to determine whether the Debtor's plan of reorganization ultimately will be confirmed pursuant to Section 1129 of the Bankruptcy Code. Instead, it is only necessary to determine whether there is a "reasonable possibility" that the Debtor can reorganize.

Article 3 of the Debtor's Second Amended Plan of Reorganization classifies the claims of creditors into eight classes. The allowed secured claim of the Movants is designated as Class 3, and the allowed unsecured claim of the Movants is designated as Class 3.2.6. The claims in all of the classes are impaired. Article 7 of the Second Amended Plan sets forth the proposed means of execution and implementation of the Plan. Article 7.1, entitled "Source of Funds," provides that the funds necessary to pay the allowed claims "shall be derived from the new Capital Contributions, retainers paid to Professionals, all amounts paid to MMT [Movants] pursuant to stipulations or other Court orders, the operation of the Venice Property and the Cash of the Debtor on and after the Effective Date." Article 7.2 describes the Capital Contribution from equity interest holders contemplated by the Plan as a source of funding. Article 9 of the Second Amended Plan, entitled "Modification of Plan," provides that "[m]odifications to the Plan may be proposed in writing by the Debtor at any time before or after Confirmation provided that the Plan, as modified, meets the requirements of Section 1127 of

the Bankruptcy Code." In Article 9.3, the Debtor expressly "reserves the right, in accordance with the Bankruptcy Code, to amend and modify this Plan prior to the Confirmation Date in any manner it determines is appropriate or necessary to obtain Confirmation of the Plan."

The Debtor operates an ongoing business which generates stable and significant income. The Debtor has not languished due to the absence of tenants, and the apartment complex therefore may have value as an ongoing concern. The Debtor filed its initial Plan of Reorganization within the exclusive period set forth in Section 1121 of the Bankruptcy Code, and the hearing to consider approval of the Second Amended Disclosure Statement was conducted on January 12, 1998. In addition to the rents from the property, the Debtor's Plan provides for secondary funding from capital contributions by the Debtor's equity interest holders.

Movants contend that the Final Judgment of Foreclosure divested the Debtor of ownership of the rents, and that the rents therefore are not property of the bankruptcy estate which the Debtor can use pursuant to Section 363 of the Bankruptcy Code. Movants further contend that the Debtor's Plan is not feasible if it is not permitted to use the rents. The Court acknowledges that the ownership of the rents has been litigated in a separate proceeding, and the Court is entering an order on the Debtor's motion to use cash collateral contemporaneously with this Order. The Debtor, however, has not yet had an opportunity to evaluate and react to that order.

■ As set forth above, the Debtor may amend its Plan prior to the entry of an order of confirmation pursuant to Section 1127 of the Bankruptcy Code, and the inquiry under Section 362(d)(2) should "not be restricted to only a consideration of a single method of reorganization but any and all viable and effective methods." *Dunes Hotel*, 188 B.R. at 170. According-

**814**

ly, the Court cannot conclude that any amended Plan proposed by the Debtor would necessarily be patently unconfirmable. Further, it appears to the Court that the Debtor has moved meaningfully toward reorganization. *In re Creekstone Apartments, L.P.,* 168 B.R. 639, 643 (Bankr.M.D.Tenn.1994). In conclusion, the Court cannot determine at this stage of the case that there is no reasonable possibility for the Debtor to reorganize. The automatic stay should not be lifted pursuant to Section 362(d)(2) of the Bankruptcy Code.

### Conclusion

Movants are not entitled to relief from the automatic stay pursuant to Section 362(d)(1) based on the Debtor's lack of good faith in filing the chapter 11 petition. The Debtor's petition was filed in response to financial pressures and the potential loss of its primary asset, with no aggravating or unusual factors indicating an intent to abuse the judicial process and the purposes of the reorganization provisions of the Bankruptcy Code.

Additionally, Movants are not entitled to relief from the automatic stay pursuant to Section 362(d)(2) because the Court cannot conclude that there is no "reasonable possibility of a successful reorganization within a reasonable time."

Accordingly:

**IT IS ORDERED** that the Motion for Relief from Automatic Stay filed by Multifamily Mortgage Trust 1996–1 and LaSalle National Bank is denied without prejudice.